**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> KOUWANII BRUNSTORFF, <br><br> *Defendant.* | No. 3:12-cr-00004 (MPS) |

**RULING ON MOTION FOR COMPASSIONATE RELEASE**

Defendant Kouwanii Brunstorff is serving a sentence of imprisonment at Schuylkill Federal Correctional Institution in Pennsylvania and has filed a motion under 18 U.S.C. § 3582(c)(1)(A) for a reduction in his term of imprisonment due to the health risk posed by the COVID-19 virus. ECF No. 98. The Government filed a memorandum opposing Brunstorff's motion. ECF No. 105. I have carefully considered these materials and the exhibits attached thereto, as well as Brunstorff's additional memoranda supporting his motion and the exhibits attached thereto (ECF Nos. 104, 108, 112-1), and other exhibits submitted by Brunstorff (ECF Nos. 103, 103-1 to 103-11, 107, 111). For the reasons that follow, Brunstorff's motion is denied.

On January 5, 2012, a grand jury returned an indictment charging Brunstorff with the unlawful possession of firearms by a convicted felon (Count 1) and the unlawful possession of ammunition by a convicted felon (Count 2), both in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). ECF No. 1. On March 30, 2012, he pled guilty to count one of the indictment before the Honorable Ellen Bree Burns. ECF Nos. 39, 45. On August 10, 2012, Judge Burns sentenced the defendant

to the mandatory minimum[1] of 180 months' imprisonment and 5 years on supervised release. ECF Nos. 85, 88. On June 13, 2016, Brunstorff's case was reassigned to me. ECF No. 97. Brunstorff has been in custody since March 23, 2011 and has served approximately 9 years and 7 months of his sentence. ECF No. 68 at 1. His projected date of release is June 11, 2024.[2]

Section 3582(c)(1)(A) authorizes courts to modify terms of imprisonment as follows:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Under this section, as modified by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5239, I am free "to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release." *United States v. Brooker*, No. 19-3218-CR, 2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020) ("Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."). As a result, because Brunstorff – and not the Bureau of Prisons ("BOP") – brings the instant motion, I am not bound by the Sentencing Commission's outdated policy statement applicable to Section 3582(c)(1)(A), *see* U.S.S.G. § 1B1.13, which the Second Circuit recognized as only applying to motions for sentence reduction brought by the BOP. *Brooker*, 2020 WL 5739712, at *1, 6 ("hold[ing] that Application Note 1(D)

---

[1] Because Brunstorff had three qualifying predicate convictions, the offense for which he is currently incarcerated triggered the enhanced sentencing provision of the Armed Career Criminal Act. *See* ECF No. 68 ¶ 50; *see also* ECF No. 45 at 1-2.

[2] Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc (last visited October 14, 2020).

does not apply to compassionate release motions brought directly to the court by a defendant under the First Step Act . . ."; rather, this Guideline "only [applies] to those motions that the BOP has made" under this Act).   However, "[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason." *Brooker*, 2020 WL 5739712, at *8 (citing 28 U.S.C. § 994(t)) (emphasis in original).

Therefore, I may reduce Brunstorff's term of imprisonment if (1) he has fully exhausted his administrative remedies or 30 days have passed from receipt of his request by the Warden, and (2) I find, after considering the Section 3553(a) factors, that "extraordinary and compelling reasons warrant" a reduction of his term of imprisonment.

As the Government acknowledges, ECF No. 105 at 7, Brunstorff has met the exhaustion requirement because he filed a request for compassionate release with the Bureau of Prisons on April 2, 2020, ECF No. 103-1, and the Warden denied that request on June 1, 2020, ECF No. 103-2.   As to the merits of Brunstorff's motion, I find that, when all of the circumstances including the Section 3553(a) factors are considered, he has not shown that there exist "extraordinary and compelling reasons" to warrant a reduction of his term of imprisonment.

Brunstorff argues that he is at high risk for serious illness or death from COVID-19 because of obesity, a history of smoking, hypertension, prediabetes, and asthma.   ECF No. 104 at 1. Brunstorff is currently 43 years old, *id.* at 26, so his age alone does not place him at increased risk of a severe illness under the guidelines developed by the Centers for Disease Control and Prevention ("CDC").[3]

---

[3] According to the Centers for Disease Control and Prevention ("CDC"), "the risk for severe illness from COVID-19 increases with age, with older adults at highest risk." Centers for Disease Control and Prevention, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited October 14, 2020).  Age-related risk increases on a sliding scale, and the "greatest risk for severe illness from COVID-19 is among those aged 85 or older." *Id.*

As the Government concedes, ECF No. 105 at 8, Brunstorff's obesity places him at increased risk of severe illness from COVID-19 under the CDC guidelines. As of August 2020, Brunstorff weighed 241 lbs (ECF No. 111) which, at 5'11" (ECF No. 103-4 at 24), yields a BMI of 33.6.[4] According to the Centers for Disease Control and Prevention ("CDC"), "[p]eople of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19."[5] Obesity, defined as a BMI of 30 or greater, is one of these underlying medical conditions.[6]

Brunstorff also argues that his history of smoking cigarettes may increase his risk from COVID-19. ECF No. 104 at 22-23; *see also* ECF No. 103-4 at 50 (Brunstorff noting, in 2012, that he has smoked a quarter-pack of a cigarettes per day for 10 years). According to the CDC, "[b]eing a current or former cigarette smoker increases your risk of severe illness from COVID-19."[7] Thus, assuming Brunstorff's report of his history of smoking is true, and I have no reason to believe that it is not, his past use of cigarettes increases his risk of severe illness from COVID-19.

Brunstorff's other claimed risk factors of hypertension, prediabetes, and asthma do not appear to increase his risk of severe illness from COVID-19. Brunstorff argues that he faces an increased risk from COVID-19 because his "blood pressure was elevated multiple times between 2013 and 2020 . . .", ECF No. 104 at 14, and that his prior readings "indicate Stage 1 hypertension . . ", *id.*, and Stage 2 hypertension, ECF No. 112-1 at 1. According to the CDC, having "hypertension (high blood pressure) . . . may increase [a person's] risk of severe illness from

---

[4] Centers for Disease Control and Prevention, *Adult BMI Calculator*, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited October 14, 2020).
[5] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited October 14, 2020).
[6] *Id.*
[7] *Id.*

COVID-19."[8]  Brunstorff points to his recent blood pressure readings that are consistent with stage 1 or stage 2 hypertension as evidence of this risk factor.[9]  *See* ECF No. 111 (blood pressure reading of 134/98 on 8/24/2020); ECF No. 107 at 2 (blood pressure reading of 128/84 on 8/4/2020); ECF No. 103-10 at 21 (blood pressure reading of 122/88 on 3/17/2020); ECF No. 103-8 at 1 (blood pressure reading of 136/86 on 8/24/2018).   But other recent readings reflect a normal blood pressure, *see, e.g.*, ECF No. 103-10 at 21 (blood pressure reading of 116/71 on 11/12/2019); *id.* at 17 (blood pressure reading of 118/74 on 10/28/2019); *id.* at 18 (blood pressure reading of 118/73 on 2/26/2018); *id.* (blood pressure reading of 114/75 on 8/7/2017), and Brunstorff does not point to any evidence that he has been diagnosed with, or treated for, hypertension.   Indeed, according to the Mayo Clinic, a "doctor will likely take two to three blood pressure readings each at three or more separate appointments before diagnosing [a patient] with high blood pressure.   This is because blood pressure normally varies throughout the day, and it may be elevated during visits to the doctor [due to] []white coat hypertension[]."[10]  Brunstorff also denied having hypertension on October 28, 2019 during a dental screening visit.   *Id.* at 33.   Thus, Brunstorff likely does not face any increased risk of severe illness from COVID-19 based on his blood pressure readings, but, based on my discussion of the Section 3553(a) factors below, I would reach the same result even

---

[8] *Id.*

[9] Blood pressure measurements falls into four general categories:
   Normal blood pressure is below 120/80 mm Hg.
   Elevated blood pressure is a systolic pressure ranging from 120 to 129 mm Hg and a diastolic pressure below 80 mm Hg.
   Stage 1 hypertension is a systolic pressure ranging from 130 to 139 mm Hg or a diastolic pressure ranging from 80 to 89 mm Hg.
   Stage 2 hypertension is a systolic pressure of 140 mm Hg or higher or a diastolic pressure of 90 mm Hg or higher.
Mayo Clinic, *High Blood Pressure (hypertension)*, https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/diagnosis-treatment/drc-20373417 (last visited October 14, 2020).

[10] *Id.*   According to Wikipedia, "white coat hypertension," more commonly known as white coat syndrome, is a phenomenon in which people exhibit a blood pressure level above the normal range, in a clinical setting, although they do not exhibit it in other settings.   It is believed that the phenomenon is due to anxiety experienced during a clinic visit.

if he did.

Brunstorff also argues that his "prediabetes further exposes him to serious illness or death from COVID-19." ECF No. 104 at 19. He points to blood sugar readings from 2018 and 2016 that he asserts put him at "increased risk" of developing diabetes. *Id.* at 19-20. But Brunstorff denied actually having diabetes on October 28, 2019. ECF No. 103-10 at 33. According to the CDC, type 2 diabetes increases a person's risk of severe illness, and type 1 or gestational diabetes may increase a person's risk, but the CDC does not identify a "risk" of diabetes as increasing a person's risk of severe illness.[11] Thus, even if Brunstorff's assertion is true that he may face some risk of *developing* diabetes, that risk does not appear to increase his risk of severe illness from COVID-19 under the current CDC guidelines. Again, however, even if it did, I would reach the same result based on the Section 3553(a) factors.

Lastly, Brunstorff argues that his asthma presents another COVID risk factor. But the only evidence he identifies supporting his claim that he suffers from asthma comes from 2012. *See* ECF No. 104 at 23; ECF No. 68 at 13, ¶ 43. Even then, however, the report indicates that Brunstorff "[was] not . . . on any medication or under a doctor's care." ECF No. 68 at 13, ¶ 43. And Brunstorff points to no other evidence that he suffers from, or was ever treated for, asthma. The CDC identifies "moderate-to-severe asthma" as a factor that "may increase [a person's] risk for severe illness from COVID-19."[12] On October 28, 2019, Brunstorff denied having any respiratory or cardiovascular conditions. ECF No. 103-10 at 33-34. Thus, because Brunstorff does not identify any evidence suggesting that he suffers from "moderate-to-severe" asthma, he does not appear to face any increased risk of severe illness from COVID-19 based on this factor. Once again, even if he did, I would reach the same result based on the Section 3553(a) factors.

---

[11] Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, *supra* note 5.

[12] *Id.*

While Brunstorff faces an increased risk from COVID-19 under the CDC guidelines due to his obesity and history of smoking,[13] I find that these conditions are insufficient to qualify as an "extraordinary" or "compelling" reason warranting a reduction in his term of imprisonment when the factors in 18 U.S.C. § 3553(a) are taken into account, as they must be under Section 3582(c)(1)(A).  And although Brunstorff takes pains to explain the general danger posed by COVID-19, *see* ECF No. 104 at 4-12, he has not demonstrated that there is any elevated risk of exposure at FCI Schuylkill compared with other prison facilities.  Indeed, according to the BOP, FCI Schuylkill has reported only one staff member infected and one inmate recovered from COVID-19.[14]  In any event, here, the Section 3553(a) factors—especially the need to protect the public—weigh heavily against the requested reduction in his term of imprisonment.

Brunstorff has a long criminal record that includes three convictions for violent offenses. *See* ECF No. 68 ¶ 12 ("[T]he parties agree that he is an armed career criminal based on three or more violent felony offenses committed on different occasions. . . . includ[ing his convictions in 1994 and 1999.]").  In January 1994, at the age of 16, Brunstorff was convicted of two counts of robbery in the first degree, both of which appear to have involved a firearm.  ECF No. 105-1 at 1, 3, 8; *see also* ECF No. 68 ¶ 21.  He received a sentence of 2 to 6 years in prison on each count to be served concurrently.  ECF No. 68 ¶ 21.  Brunstorff was paroled in March 1999, absconded from parole, was returned to custody in June 1999, and was released one month later.  *Id.*  During this period of incarceration, at the age of 20, Brunstorff was charged and pled guilty to assault and attempted assault in the second degree for conduct involving "slashing [another inmate] with a

---

[13] The CDC guidelines state that, with respect to people with multiple underlying conditions: "The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id.*  As a result, Brunstorff's obesity and history of smoking appear to increase his overall risk level more together than each condition would on its own.  The CDC does not provide any indication of the extent of the increased risk due to multiple underlying conditions.
[14] Federal Bureau of Prisons, *COVID-19 Update*, https://www.bop.gov/coronavirus/index.jsp (last visited October 14, 2020).

single edge razor . . ." and "slash[ing] a corrections officer (CO) with a razor blade . . .", *id.* ¶ 22. In 2004, at the age of 26, Brunstorff was convicted of criminal possession of a controlled substance (cocaine) in the fourth degree. *Id.* ¶ 25. (The arrest report of the incident indicated that Brunstorff was found in possession of a loaded .40 caliber Beretta firearm, although he was not convicted for this alleged conduct.) *Id.* He received a sentence of 3 to 6 years' incarceration and was released in December 2009. *Id.* Then, in 2012—well into his thirties—Brunstorff pled guilty and was sentenced to 15 years in prison for the offenses for which he is currently incarcerated, which included felony possession of ammunition and multiple firearms. *Id.* ¶ 25; ECF Nos. 85, 88. While Brunstorff's convictions involving violence and threats of violence occurred when he was in his teens and twenties, his more recent record strongly suggests that he has not entirely left behind his use of violence or threats of violence. His latest conviction for felony possession of guns and ammunition occurred in his thirties. More recently, his admission that he made a shank out of plexiglass and hid it in his cell occurred just one year ago – while in his early 40s and while serving the term of imprisonment he now asks the Court to reduce. *See* ECF Nos. 105-2, 105-3. As a result, after considering the facts here in light of the 3553(a) factors, I cannot find that Brunstorff has made an extraordinary or compelling case for a reduction in his term of imprisonment. When combined with his criminal record, his recent disciplinary history at the BOP, *see* ECF Nos. 105-4, 105-5—especially his fashioning of a serious weapon—leads me to conclude that further prison time is necessary to protect the public, in spite of his increased vulnerability to COVID-19.

I do not take lightly the danger that COVID-19 poses to inmates—and especially those that are medically vulnerable. And although Brunstorff has demonstrated he faces an increased risk of severe illness from COVID-19 based on his obesity and history of smoking, I find that, when the Section 3553(a) factors—and especially his lengthy and violent criminal history and his recent

disciplinary history at the BOP—are accounted for in this case, the risk to Brunstorff's health posed by COVID-19 does not move the needle to the "extraordinary and compelling" level that would warrant ending his term of imprisonment.  I therefore must deny this motion.

For the foregoing reasons, Brunstorff's motion to reduce sentence (ECF No. 98) is DENIED.

IT IS SO ORDERED.

_____
/s/
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              October 16, 2020